## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| In re:<br><br>DRAGAN MICIC,<br><br>                    Debtor. | Chapter 7<br><br>Bankruptcy No. 19-10717<br><br>Honorable Judge Jack B. Schmetterer |
| TOMASZ MARKUT,<br><br>                    Plaintiff,<br><br>        v.<br><br>DRAGAN MICIC,<br><br>                    Defendant. | Adversary No. 19-00887 |

### MEMORANDUM DECISION

Plaintiff-creditor Tomasz Markut ("Plaintiff") seeks a determination following trial of this matter that any debt owed by Defendant-Debtor Dragan Micic ("Defendant") to him by reason of a physical encounter dated December 11, 2015 is excepted from discharge under Section 523(a)(6) of Title 11 of the United States Code.[1]

For reasons stated herein, which constitute the Court's Findings of Fact and Conclusions of Law, it is held that all of the elements required under Section 523(a)(6) have been established, and accordingly, any such debt is nondischargeable.

### JURISDICTION

Subject matter jurisdiction lies under 28 U.S.C. § 1334. The district court may refer bankruptcy proceedings to a bankruptcy judge under 28 U.S.C. § 157 and 28 U.S.C. § 1334, and this proceeding was thereby referred here by Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. Venue lies under 28 U.S.C. § 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I). "A bankruptcy judge has constitutional authority to enter final judgment as to dischargeability." *In re Monarrez*, 588 B.R. 838, 845 (Bankr.

---

[1] The underlying claim is a personal injury tort. Section 157(b)(5) states that: "[t]he district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending." 28 U.S.C. § 157(b)(5). But no parties moved to withdraw the matter. Section 157(b)(5) is procedural. *Stern v. Marshall*, 564 U.S. 462, 479 (2011). Plaintiff seeks only a determination of nondischargeability, to which this Court has the authority to decide. 28 U.S.C. § 157(b)(1); (b)(2)(I).

N.D. Ill. 2018) (Barnes, T.); *see also Stern v. Marshall*, 564 U.S. 462 (2011) (matters of nondischargeability stems from the bankruptcy itself).

## FINDINGS OF FACT[2]

1. On December 11, 2015, Defendant resided at 4849 North Natchez Avenue, Chicago, Illinois 60567. [Joint Stipulation,[3] at ¶ 1].

2. On December 11, 2015, Plaintiff resided two doors south from Defendant's residence on North Natchez Avenue (in other words, there was one home in between Plaintiff and Defendants' residences). [Joint Stipulation, at ¶ 4; Plaintiff Trial Ex. B7].

3. Plaintiff and Defendants' houses were located on the east side of Natchez Avenue. Across from Plaintiff and Defendants' houses, on the west side of the street, was a preschool. [Trial Tr. Vol. I 20:22-23:1; Plaintiff Trial Ex. B2].

4. The east side of that area of the street was a public street with no restrictions on parking. [Trial Tr. Vol. I 33:17-22; Plaintiff Trial Ex. B2].

5. The west side of that area of the street was a tow zone with no parking on school days from 7:00 a.m. to 4:30 p.m. [Joint Stipulation, at ¶ 7; Trial Tr. Vol. I 29:24-30:12; Plaintiff Trial Ex. B2].

6. Defendant usually parked his work van on the public way in front of his own residence (on the east side of the street). [Joint Stipulation, at ¶ 5].

7. On the evening of December 10, 2015, Defendant parked his van on the west side of the street. [Joint Stipulation, at ¶ 6].

8. Defendant parked on the west side of the street because there was no parking available on the side of the street of his residence when he returned home from work and the height of his garage door would not accommodate his van. [Joint Stipulation, at ¶ 8].

9. December 11, 2015 was a Friday and a school day. [Trial Tr. Vol. I 32:1-6].

10. On the morning of December 11, 2015, Plaintiff's vehicle was parked on the east side of the street directly in front of Defendant's residence. [Joint Stipulation, at ¶ 9].

11. Plaintiff parked in that spot because he was cleaning and reorganizing his garage then. [Trial Tr. Vol. I 48:8-24].

---

[2] The Findings of Fact are drawn from the docket, the parties' stipulations of fact, and the testimony and evidence presented and admitted at trial.
[3] [Dkt. No. 104].

2

12. On the morning of December 11, 2015, there were no other spaces on the east side of the street available for Defendant to relocate his van. [Joint Stipulation, at ¶ 10].

13. Between 7 a.m. to 8 a.m., Defendant called Plaintiff repeatedly. [Joint Stipulation, at ¶¶ 3 & 12; Trial Tr. Vol. I 52:5-9].

14. After a few unanswered calls, Plaintiff answered, upon which Defendant demanded Plaintiff to move his parked car. [Trial Tr. Vol. I 52:10-14].

15. When Plaintiff attempted to explain, Defendant started yelling and swearing, stating "move your fucking car." [Trial Tr. Vol. I 52:15-55:5].

16. In that call, Plaintiff did not tell Defendant that he was planning on moving his car or that he was planning on using his car to drop his daughter off at school. [Trial Tr. Vol. II 118:3-120:10].

17. During the call, Plaintiff asked Defendant what was wrong with him and told him maybe he need some help calling people that early in the morning. [Trial Tr. Vol. II 120:11-120:3].

18. After the call ended, Defendant kept calling Plaintiff. [Trial Tr. Vol. I 55:7-9].

19. Plaintiff did not answer any further calls. *Id.*

20. At about 8:04 a.m., Defendant sent a text message to Plaintiff which stated, "[m]ove your fucking car." [Joint Stipulation, at ¶¶ 3 & 13; Plaintiff Trial Ex. A].

21. At some point before 8:30 a.m., Plaintiff left his home and walked on the public sidewalk towards his parked car. [Trial Tr. Vol. II 83:24-85:6].

22. Defendant saw Plaintiff on the sidewalk in front of the house in between their residences traveling from Plaintiff's residence towards Plaintiff's car as Defendant exited his residence through his front door. [Joint Stipulation, at ¶ 14].

23. The front door of Defendant's residence opens out to a small porch with six steps leading down to a walkway that continues straight forward to the street, with a sidewalk parallel to the street crossing the walkway between the steps and the street. [Joint Stipulation, at ¶ 11].

24. Defendant began shouting profanities at Plaintiff and briskly walked towards him. [Trial Tr. Vol. II 86:9-18; Trial Tr. Vol. II 156:12-15].

25. Defendant appeared angry and had a red face, clenched fists, and flexed muscles. [Trial Tr. Vol. II 86:19-87:2].

26. Plaintiff did not move towards Defendant or towards Defendant's home. [Trial Tr. Vol. II 87:3-10].

3

27. On the sidewalk in front of Plaintiff's car, in apparent anger, Defendant straightened his arms and shoved Plaintiff with both of his hands against Plaintiff's chest. [Trial Tr. Vol. II 87:12-88:11, 89:24-90:4].

28. Plaintiff lost his balance and was pushed back. [Trial Tr. Vol. II 88:9-11, 89:24-90:4].

29. In apparent anger, Defendant then proceeded to move towards Plaintiff and head butted Plaintiff in the face. [Trial Tr. Vol. II 88:6-14, 89:24-90:4].

30. As more fully discussed in the Conclusions of Law section below, which are adopted herein as additional findings of fact, for purposes of nondischargeability, the conduct of Defendant was willful and malicious.

31. After the contact, Plaintiff turned away from Defendant. [Joint Stipulation, at ¶ 15].

32. Plaintiff did so to avoid any further altercation. [Trial Tr. Vol. II 90:14-19].

33. Plaintiff did not hit or push Defendant. [Joint Stipulation, at ¶ 20].

34. Plaintiff did not speak at all during the confrontation. [Trial Tr. Vol. II 94:11-15].

35. As Plaintiff was walking away, Defendant yelled profanities at Plaintiff and told Plaintiff "this is what you get." [Trial Tr. Vol. II 90:20-24, 94:16-97:4].

36. Plaintiff went to his vehicle and drove away. [Joint Stipulation, at ¶ 15].

37. Specifically, Plaintiff drove around the block towards an alley, parked the car in the alley, took his daughter and drove her to school, and then went to a police station and filed a police report. [Trial Tr. Vol. II 97:3-22].

38. Then, Plaintiff drove to see his family doctor and his dentist. [Trial Tr. Vol. II 97:20-99:4].

39. Plaintiff suffered injuries to his nose and teeth requiring medical attention as a result of the contact. [Trial Tr. Vol. II 88:15-89:20; Plaintiff Trial Ex. D1-D4].

40. Defendant did not observe any injury to Plaintiff. [Joint Stipulation, at ¶ 16].

41. Defendant called Plaintiff later that day to apologize for the argument. [Joint Stipulation, at ¶ 17].

## CONCLUSIONS OF LAW[4]

Section 523(a)(6) of the Bankruptcy Code provides that any debt "for willful and malicious injury by the debtor to another entity" is nondischargeable. 11 U.S.C. § 523(a)(6). In order to be entitled to a determination of nondischargeability, a creditor must prove: (1) an injury caused by the debtor; (2) willfully; and (3) maliciously. *First Weber Grp., Inc. v. Horsfall*, 738 F.3d 767, 774

---

[4] Findings contained in this "Conclusions of Law" section shall stand as additional findings of fact.

4

(7th Cir. 2013). The plaintiff seeking to establish nondischargeability under Section 523(a) must do so by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291 (1991).

A. Plaintiff Suffered Injuries Caused by Defendant

While not defined in the Bankruptcy Code, in terms of Section 523(a)(6), injury "is understood to mean a 'violation of another's legal right, for which the law provides a remedy.'" *Horsfall*, 734 F.3d at 774 (quoting *In re Lymberopoulos*, 453 B.R. 340, 343 (Bankr. N.D. Ill. 2011)).

The evidence at trial concretely establishes that Defendant caused injuries to Plaintiff resulting from the physical altercation between the parties. Specifically, Plaintiff suffered injuries to his nose and teeth that required medical attention.

B. Defendant Acted Willfully to Hurt Plaintiff

An action is "willful" for purposes of Section 523(a)(6) when there is "a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998) (emphasis in original). To establish willfulness, a plaintiff must prove that the "debtor's motive was to inflict the injury, or the debtor's act was substantially certain to result in injury." *Horsfall*, 734 F.3d at 774 (quoting *Bukowski v. Patel*, 266 B.R. 838, 844 (E.D. Wis. 2001)).

Here, Defendant's actions were willful. Plaintiff has adequately proven that Defendant was angry at Plaintiff and intended to (and did) cause injury to Plaintiff due to a parking dispute. On the morning of December 11, 2015, Defendant's vehicle was illegally parked on the west side of the street while Plaintiff's vehicle was properly parked on the east side of the street right in front of Defendant's house. Despite the fact that the street is a public street and there are no assigned parking spaces, Defendant was upset at Plaintiff for parking in "his" usual parking spot as there were no other spaces on the east side of the street for Defendant to relocate his vehicle. Due to this fact, Defendant called Plaintiff numerous times, and when Plaintiff finally answered the phone, Defendant yelled and screamed at Plaintiff, demanding Plaintiff to move his vehicle. When Plaintiff ended the call without providing a verbal confirmation that he would move his vehicle, Defendant became more incensed and texted Plaintiff "[m]ove your fucking car." Despite the fact that Plaintiff refused to engage with Defendant any longer, when Defendant saw Plaintiff walking to his car, Defendant voluntarily left his house to continue to berate Plaintiff and Defendant was the one who struck Plaintiff. As stipulated by the parties, Plaintiff did not hit or push Defendant.

[Joint Stipulation, at ¶ 20]; *see also* [Trial Tr. Vol. III 198:7-10]. And, after the contact, Defendant kept yelling profanities to Plaintiff and stated, "this is what you get."

Unlike what Defendant argues, a plaintiff does not have to prove subjective intent to injure or a showing of a debtor's subjective knowledge that injury is substantially certain to result from his acts. As stated by the Seventh Circuit, willfulness is determined by an objective standard, not a subjective standard. *Gerard v. Gerard*, 780 F.3d 806, 811 (7th Cir. 2015) ("We further explained [in *Horsfall*] that willfulness is judged by an objective standard . . ."). Here, applying an objective standard, it can be inferred from the circumstances surrounding the injury at issue that when Plaintiff refused to act in accordance with Defendant's demands, Defendant lost his temper and used force to inflict injury to Plaintiff. Accordingly, the Court finds that Defendant willfully caused Plaintiff's injury.

## C. Defendant Acted Maliciously

Maliciousness requires that the debtor acted "in conscious disregard of his duties or without just cause or excuse; it does not require ill-will or specific intent to do harm." *Horsfall*, 734 F.3d at 774 (quoting *Matter of Thirtyacre*, 36 F.3d 697, 700 (7th Cir. 1994)).

Defendant asserts a claim of self-defense under Illinois law as justification for his actions. "Self-defense can constitute a justifiable excuse for a defendant's actions and negate a claim of malice." *In re Mathews*, 433 B.R. 732, 735 (Bankr. E.D. Wis. 2010), *aff'd sub nom. Est. of Sustache v. Mathews*, 452 B.R. 751 (E.D. Wis. 2011); *see also In re Soliman*, 539 B.R. 692, 700 (Bankr. S.D.N.Y. 2015). The burden is on the debtor to establish by a preponderance of the evidence the elements of this affirmative defense. *In re Taylor*, 322 B.R. 306, 309 (Bankr. N.D. Ohio 2004).

Under Illinois law, to assert a self-defense claim, the defendant must prove: "(1) force had been threatened against him; (2) he was not the aggressor; (3) the danger of harm was imminent; (4) the force threatened against him was unlawful; (5) he had an actual belief that (a) a danger existed, (b) force was necessary to avert the danger, and (c) the amount of force used was necessary; and (6) his belief was reasonable." *Thompson v. Petit*, 294 Ill. App. 3d 1029, 1035, 691 N.E.2d 860, 864 (1998).

Defendant has failed to establish by a preponderance of the evidence the necessary elements for a claim of self-defense. Defendant's testimony was inconsistent and reflect different versions of the events that transpired. On one hand, Defendant could not provide a clear answer as to whether Plaintiff entered his property from where Plaintiff was walking on the public sidewalk

6

parallel to the street, yet his testimony was also that Plaintiff approached him so closely (to the front steps in front of his house) that he had to use his arms and hands to stop Plaintiff's advance. [Trial Tr. Vol. II 156:8-15, 157:23-25, 162:15-18, 165:4-12, 166:1-9]. Moreover, at one point, Defendant testified that he did not hit Plaintiff, yet earlier his testimony was that "[w]e were treating each other with swearing [sic] words and pushing each other on the sidewalk." [Trial Tr. Vol. II 156:8-15, 166:24-167:2]. In fact, this latter testimony directly contradicts the stipulated fact that Plaintiff did not hit or push Defendant. [Joint Stipulation, at ¶ 20]. Furthermore, Defendant testified that he did not headbutt Plaintiff, but on cross examination he admitted that his prior testimony at deposition was that he was not sure whether his head came into contact with Plaintiff's. [Trial Tr. Vol. II 167:102; Trial Tr. Vol. III 178:12-179:14]. As such, his testimony is not credible.

Defendant makes a passing argument that Plaintiff's testimony is not credible as: (1) Plaintiff provides inconsistent statements about events that transpired in summer of 2015; (2) Plaintiff's narrative of the phone call is incongruent as he claimed he wasn't able to get an opportunity to explain himself yet was able to tell Defendant he needs some kind of help and not to call him; (3) Plaintiff's turning away and refusal to engage in a physical altercation is unbelievable; and (4) Plaintiff declined to have Defendant arrested, did not request medical treatment, and did not have photographs of his injuries taken.

Defendant's arguments are without merit. As was pointed out by the Court at trial, events and peripheral anger unrelated to the present dispute are irrelevant. And, it is perfectly plausible that Plaintiff was only able to get in a few sentences in a phone call before being continuously berated and decided to hang up instead of explaining any further. Likewise, it is also believable that Plaintiff has a tendency to avoid conflicts and physical confrontations. Finally, as to the last point, Plaintiff testified that no medical treatment was sought because he already contacted and was on the way to see his family doctor after the police station, no photos were taken as nobody at the police station requested any, and, while Plaintiff was attempting to testify as to why he declined to have Defendant arrested, counsel for Defendant cut him off from finishing his answer. [Trial Tr. Vol. II 65:7-21]. Therefore, having considered the evidence and testimony, and having weighed the credibility of the witnesses, the Court accepts Plaintiff's version of the story.

Even if Defendant's testimony were to be accepted, Defendant has not met his burden to establish self-defense. While Defendant has testified that Plaintiff appeared quite angry, spoke

with a raised voice, was waving his arms up and down, and approached Defendant, without more, Defendant has not demonstrated that this establishes that force had been threatened against him or was imminent. Furthermore, no testimony was provided demonstrating Defendant had an actual belief that force was necessary to avert the danger or that the amount of force he used was necessary.

Finally, a claim of self-defense cannot be raised when a defendant faces a dangerous situation arising out of his own aggressive conduct. *Thompson*, 294 Ill. App. 3d at 1035, 691 N.E.2d at 864. Here, Defendant was the aggressor who initiated a confrontation by leaving his house and approached Plaintiff while screaming profanities – all would have been avoided had Defendant not created the dangerous situation himself. Accordingly, because Defendant has not met his burden to demonstrate self-defense, it is concluded that Defendant's actions were malicious.

## CONCLUSION

For the aforementioned reasons, all of the elements required under § 523(a)(6) have been established, and accordingly, any debt owed to Plaintiff by Defendant by reason of a physical encounter dated December 11, 2015 is nondischargeable. A corresponding Judgment Order consistent with this decision shall be entered concurrently herewith.

ENTER:

Jack B. Schmetterer
United States Bankruptcy Judge

MLM

Dated this 20th day of September 2021

8